IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DEBORAH RASCHE                                                                    PLAINTIFF

VS.                                                              CIVIL ACTION NO.1:07CV081-D-A

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY ADMINISTRATION                                                 DEFENDANT

**REPORT AND RECOMMENDATION**

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Deborah Rasche for a disability benefits under Title II and supplemental security income under Title XVI of the Social Security Act.

**I. FACTUAL AND PROCEDURAL HISTORY**

The plaintiff was born on March 6, 1958 and was forty-eight years old at the time of second the administrative hearing in this case on July 28, 2006. She completed high school. The plaintiff's past relevant work has been as a store manager, office manager, cook and fast food establishment cashier. She filed her application for disability benefits on March 26, 2002. She alleges a disability onset date of February 1, 2002 due to cervical spine impairments, migraine headaches, anxiety, and carpal tunnel syndrome. The Social Security Administration denied plaintiff's application initially and on reconsideration. Following a hearing on April 26, 2004, the Administrative Law Judge

("ALJ") entered a decision dated December 29, 2004, finding that the plaintiff was not disabled. The plaintiff filed a request for review of that decision with the Appeals Council. The Appeals Council granted the plaintiff's request for review on July 28, 2005. Thereafter, a new administrative hearing was held. Following that hearing, the ALJ issued a second unfavorable decision. Plaintiff then requested review of that second decision from the Appeals Council. On February 6, 2007 the Appeals Council denied plaintiff's request for review of the second opinion and the plaintiff filed the present action with this court. The ALJ's final hearing decision is now ripe for review.

> It is noted that in its Order of Remand, the Appeals Council instructed the ALJ to:
>
> Evaluate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a and 416.920a documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c).
>
> Give further consideration to the claimant's maximum residual functional capacity (RFC) and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Rulings 85-16 and 98-8p)
>
> Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 85-14) and *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986). Hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence, the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 207). Although the ALJ did give "further consideration to the claimant's maximum residual functional capacity (RFC) and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations," as required by the Appeals Council, he made only

2

cursory mention of the specific and tedious technique that is required in 20 CFR 404.1520a(e) and 20 CFR 416.920a(e).[1] At the second hearing the ALJ sought testimony of a vocational expert as

---

[1] 20 CFR 404.1520a(e) states that "[a]ssessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation." It further provides the manner in which an ALJ should proceed to document the technique required by the Social Security Regulations when identifying and determining the severity of a mental disorder. According to the Regulation, an ALJ is to "document application of the technique in the decision," and in doing so must specifically identify and rate specific areas and limitations as follows:

> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listing of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.
>
> (d) Use of the technique to evaluate mental impairments. After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s).
>
> (1) If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521).
>
> (2) If your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder. We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. We will record the presence or absence of the criteria and the rating of the degree of functional limitation on a standard document at the initial and reconsideration levels of the administrative review process. We will record the presence or

required by the Appeals Council and anticipated in Social Security Ruling 83-14, but he prohibited counsel for the plaintiff from asking certain questions of the vocational expert at the hearing.[2] Plaintiff contends that these issues, among others, require reversal.

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[3] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels then the burden shifts to the Commissioner at step five.[4] First, plaintiff

---

absence of the criteria and the rating of the degree of functional limitation in the decision at the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision), and in the decision at the Federal reviewing official, administrative law judge, and the Decision Review Board levels in claims adjudicated under the procedures in part 405 of this chapter. See paragraph (e) of this section.

(3) If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.

It is necessary that the ALJ's "written decision must incorporate the pertinent findings and conclusions" based on this technique. " The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in the section."
20 CFR 404.1520a.

[2]Although the Appeals Council cited to SSR 85-14 in its Order of Remand, a quick review of that Ruling and simple on-line search of other rulings reveals that the citation should have properly been to SSR 83-14, entitled "TITLES II AND XVI: CAPABILITY TO DO OTHER WORK--THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING A COMBINATION OF EXERTIONAL AND NONEXERTIONAL IMPAIRMENTS."

[3]*See* 20 C.F.R. §§ 404.1520, 416.920 (1998).

[4]*Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

must prove she is not currently engaged in substantial gainful activity.[5] Second, the plaintiff must prove her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities . . . ."[6] At step three the ALJ must conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[7] Fourth, the plaintiff bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work.[8] If the plaintiff is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[9] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that she cannot, in fact, perform that work.[10]

As noted there have been two administrative hearings and two unfavorable decisions in this case by the same ALJ. It is the second decision, dated July 28, 2006, that is currently on appeal before this court. In his second decision, the ALJ determined that the plaintiff suffered from cervical disorders, a panic disorder, an adjustment disorder a somatoform disorder, and a dependant

---

[5] 20 C.F.R. §§ 404.1520(b), 416.920(b) (1998).

[6] 20 C.F.R. §§ 404.1520(c), 416.920(c) (1998).

[7] 20 C.F.R. §§ 404.1520(d), 416.920(d) (1998). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525 (1998).

[8] 20 C.F.R. §§ 404.1520(e), 416.920(e) (1998).

[9] 20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (1998).

[10] *Muse*, 925 F.2d at 789.

5

personality disorder, which constitute "severe" impairments under the terms of the Act. (Tr. 26, Finding No. 2). However, the ALJ found that the plaintiff did not suffer from any impairment or combination of impairments which meet or equal the requirements of the Listings set forth in Appendix 1 to the Regulations. (Tr. 26, Finding No. 3). The Appeals Council found no basis for changing the ALJ's second decision.

On appeal to this court the plaintiff makes the following arguments:

(1) The ALJ has consistently refused, both in this case and in past cases, to follow the statutorily specified process for accurately determining disability.

(2) Instead, the ALJ relied on his own subjective analysis of the claimant as he perceives her, as opposed to the objective evidence of experts, even refusing so allow some experts the right to speak.

(3) The evidence in the record proves that plaintiff is disabled by all CFR standards, and she is thus entitled to Social Security Benefits, Disability Insurance Benefits for the following reasons:

- The severity of plaintiff's impairments exceeds the requirements of any Listing contained within the Listing of Impairments set forth at Appendix 1 of the Regulations.
- Plaintiff lacks the residual functioning capacity for a broad range of light work, with additional significant non-exertional limitations.
- Plaintiff is definitively disabled within the meaning of the Social Security Act and Regulations.
- Finally, plaintiff has been disabled throughout and before these proceedings, thus entitling her to Disability Insurance Benefits.

Plaintiff's Brief, p. 3. The court will address the plaintiff's arguments seriatim.

## II. STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g);

*Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further stated that substantial evidence:

> must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'

*Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not re-weigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994). Suffice it to say that the standard of review is very heavily weighted in favor of affirmance.

### III. DISCUSSION

The totality of plaintiff's argument may be summed up in her contention that the ALJ failed to follow the specific statutory process for determining disability, failed to follow the specific directives of the Appeals Council and that his penchant for interjecting his own subjective analysis and perceptions into the process has created reversible error. Although there is no reference in the

7

ALJ's decision to the relevant CFR sections, the government argues that the ALJ nevertheless did follow the specific procedures of 20 CFR 404.1520a and 416.920a. The Appeals Council directed that the to ALJ "[e]valuate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a and 416.920a documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a." The ALJ's decision states as follows:

> The undersigned finds further regarding mental issues that the claimant experiences "Fair" abilities to deal with the public, work with work stresses and function independently. The claimant regarding the "B" criteria experiences "mild restrictions in the activities of daily living, "mild" restrictions in maintaining social functioning and in maintaining concentration, persistence and pace, and no episodes of de-compensation. She experiences no restrictions in the "C" criteria. The undersigned affords weight in this context regarding the forgoing "fair" abilities and extrapolates the foregoing restrictions in the "B" and "C" criteria from the December 2003 assessment of Dr. Masur (Exhibit 11).

(Tr. 25). Despite the plaintiff's argument, and despite the fact that the ALJ never mentioned the applicable regulations by number, this "bare bones" acknowledgment of the regulations actually follows the process for evaluating mental status as it is codified. True, it would have been preferable for the ALJ to have analyzed the regulations in detail; yet, even though the treatment is cursory at best, he did address and evaluate every necessary part of the regulations.

In this second decision, the ALJ again found that the plaintiff's subjective complaints and symptoms were not entirely credible. In so finding, the ALJ stated,

> The undersigned finds the claimant's subjective complaints and hearing testimony less than fully credible. The claimant's assertions of debilitating constant neck pain at the level of eight on a ten-point pain scale, of stringent functional limitations wherein she can perform no comfortable lifting of any object heavier than a coffee cup and can sit or stand each for only five to ten minutes at a time, and stringent restrictions in activities of daily living wherein she can perform none of the customary household chores appear greatly disproportionate to the objective medical

8

evidence, which as summarized herein presents essentially negative findings.

(Tr. 24). The ALJ then went on to examine each of the medical findings contained in the record that contradict the plaintiff's complaints. His assessment, while again failing to mention specific code sections and regulations, nevertheless must be said to have followed the requirements for assessing a plaintiff's credibility. *See. Harper v. Sullivan,* 887 F.2d 92, 96 (5th Cir. 1989).

> The Social Security Disability Benefits Reform Act of 1984 provides that:
>
> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ...; there must be medical signs and findings ... which could reasonably be expected to produce the pain or other symptoms alleged.... Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C. § 423(d)(5)(A). The Fifth Circuit has held that while a "a claimant's assertion of pain or other symptoms must be considered by the ALJ, [42 U.S.C. § 423(d)(5)(A)] requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged." *Owens v. Heckler,* 770 F.2d 1276, 1281 (5th Cir. 1985). Case law generally supports the premise that the existence of pain does not automatically create grounds for disability. Instead, the plaintiff must present objective evidence in support of her pain. The plaintiff's own subjective testimony and other evidence of pain will not take precedence over conflicting medical evidence. *Owens, at* 1281; *see also Harrell v. Bowen* 862 F.2d 471, 481 (5th Cir.1988); *Parfait v. Bowen,* 803 F.2d 810, 813 (5th Cir.1986). It is peculiarly within the province of the ALJ to make determinations regarding credibility of the evidence. *Harrell v. Bowen*, 862 F.2d at 480. The fact that the ALJ concluded that the plaintiff did not experience the severe level of pain that she claimed is completely within the discretion of the ALJ as long as his decision is supported by substantial

9

evidence as that term is defined by case law. His lack of detail does not change the fact that his decision is thus supported by the record.

Plaintiff's counsel contends that the ALJ in this case was obviously biased, for whatever reason, against his client. The Social Security Act does not envision an adversarial review process between the claimant and the Social Security Administration or ALJ. Instead, the ALJ has the responsibility to develop the record, decide whether the individual has a valid claim, and document the evidence and reasoning behind the decision. 166 A.L.R. Fed. 361 (2000). An ALJ may not "pick and choose" only that evidence which supports his decision, but must address and make specific findings regarding the supporting and conflicting evidence, the weight to give that evidence, and reasons for his conclusions regarding the evidence. *Armstrong v. Sullivan,* 814 F. Supp 1364, 1373 (W. D. Tex 1993); *See also DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir.1983). Plaintiff's claims of bias give the court pause, and after reviewing the record as a whole, it is not difficult to understand the basis for counsel's concern. At times during the administrative hearings and in his decisions in this case, the ALJ appears to border on being argumentative.

Like plaintiff's counsel, the undersigned has repeatedly been frustrated by this ALJ's penchant for interjecting his personal opinions rather than strictly abiding by and citing to the law and regulations. Plaintiff's frustrations do not fall on deaf ears. The court has been required in this case to expend long hours poring over the record to ascertain that reversal is not, as plaintiff urges, warranted here. Yet, after meticulous review of the record and the briefs and submissions of the parties, the undersigned is unable to conclude that bias on the ALJ's part outweighs the presence of "substantial evidence." Could the ALJ have articulated reasons for denial of benefits more clearly? Absolutely. Did the ALJ fail to follow all standards required? No. The ALJ could have resolved

this case by simply doing in a straightforward manner what the Appeals Council directed and thus made this court's task in affirming the decision far less burdensome. Neither the parties nor this court should have to engage in what amounts to a scavenger hunt through the decision and applicable regulations and rulings to find all the bits and pieces that make up compliance with the AC directives. Because of the inordinate effort required of this court to resolve the instant case, in combination with the articulated concerns of bias, the undersigned requests that the Commissioner forward a copy of this opinion to the ALJ himself.

With regard to the ALJ's use of a vocational expert, the ALJ asked three hypothetical questions, two of which encompassed the exact restrictions stated above. (Tr. 363 - 365). In response to two of the questions the VE testified that the plaintiff would not be able to return to her past work nor do other jobs exist in the national economy which she could perform. (Tr. 363 - 364, hypothetical Nos. One and Two). In response to ALJ's third hypothetical, the VE stated that the plaintiff would be able to return to her past work. (Tr. 365). When the plaintiff's attorney attempted to question the VE regarding Dr. Masur's assessment and findings, the ALJ prohibited him from pursuing such questions. (Tr. 366 - 369). The plaintiff now argues that the ALJ's prohibition kept him from adequately representing his client and is against the directives of the Appeals Counsel to "obtain evidence from a vocational expert on the effect of the assessed limitations. . . [that] should reflect the specific capacity/limitations established by the record as a whole." (Order of Remand from the Appeals Counsel; Plaintiff's brief, p. 12).

A plaintiff has the right to have her attorney or representative question the VE about the effects of a physician's findings on the plaintiff's ability to perform work. Indeed, the plaintiff or her representative has the right to question the vocational expert fully on any pertinent matter within the

expert's area of expertise. 4 Social Security Law and Practice §52:103. It is necessary that the ALJ determine when a plaintiff may exercise this right and the appropriateness of any questions asked or answers given. Exceptions to this rule include:

> • If a vocational expert's replies are ambiguous or overly technical, the ALJ must follow up with more specific questions in order to obtain a response in terms understandable to the average layperson.
> • The ALJ may not permit a vocational expert to respond to questions on medical matters or to draw conclusions not within the expert's authority; e.g., regarding the claimant's residual functional capacity or the resolution of ultimate issues of fact or law.
> • The ALJ may not ask or allow the vocational expert to conduct any type of vocational examination of the claimant during the hearing.

4 Soc. Sec. Law & Prac. § 52:103. Certainly an ALJ is entitled to preclude questions that reach outside the scope of the VE's area of expertise or that seek answers to issues that are exclusively within the purview of the ALJ.

The ALJ did preclude the VE from responding to plaintiff's counsel's questions which – without articulating specific functional restrictions found by any physician – sought the VE's opinion of plaintiff's ability to do work after reviewing "the entire record." (Tr. 369 - 373). Specifically, the ALJ did not permit the VE to respond to these questions based on the second exception listed above: the questions would have required the VE to reach conclusions about medical and legal matters that were outside the VE's areas of expertise in order to then render an opinion on vocational issues. The ALJ repeatedly gave plaintiff's counsel opportunity to tailor his questions to specific limitations found by particular physicians.

After careful review of the transcript, argument and briefs provided by the parties and the record as a whole, the undersigned cannot say that the ALJ acted outside of his authority in limiting the testimony of the VE in response to plaintiff's counsel's questions. Although he prohibited

12

responses by the VE to questions posed by plaintiff's counsel relating to the diagnoses of Dr. Masur and plaintiff's ability to return to her past work, the ALJ provided the opportunity for plaintiff's counsel to rephrase his questions and provide specific limitations, including those provided by Dr. Masur's diagnoses. Plaintiff's counsel never crafted his questions in such a manner as to eliminate the ALJ's legitimate objections to the form of counsel's overbroad questions. (Tr 367 - 373). In short, the court holds that the ALJ was within his acting within the scope of this authority to prohibit questions which necessarily would have required the VE to make judgments on matters which fell outside the VE's areas of expertise.

In this cause, the ALJ failed to provide detailed explanation of the "complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation" with regard to plaintiff's mental abilities pursuant to 20 CFR 404.1520a, yet the court cannot hold that his decision is not supported by substantial evidence. Further, the court concludes that it was reasonable for the ALJ to afford the most weight to Dr. Masur's assessment of the plaintiff. In considering whether the ALJ's decision is properly supported by substantial evidence, the court considers objective medical facts, diagnoses and opinions of treating and examining physicians, the claimant's subjective evidence of pain and disability, and the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)). Nevertheless, because substantial evidence has been defined as "more than a mere scintilla," that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)), upon due consideration of the record as a whole, the court concludes that the ALJ's decision

is supported by sufficient evidence such that a reasonable mind might accept it as adequate to support a conclusion. Accordingly, the ALJ's decision must be affirmed.

### IV. CONCLUSION

In accordance with the reasons stated herein, the undersigned recommends that the decision of the ALJ be affirmed. The parties are referred to 28 U.S.C. §636(b)(1)(B) and Fed. R. Civ. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten (10) days of this date and "a party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*) (citations omitted).

Respectfully submitted, this, the 10th day of January, 2008.

/s/ S. ALLAN ALEXANDER
UNITED STATES MAGISTRATE JUDGE