# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**DEBORAH RASCHE**                                                                    **PLAINTIFF**

**VS.**                                                              **CIVIL ACTION NO.1:07CV081-A-A**

**MICHAEL J. ASTRUE, COMMISSIONER**
**OF SOCIAL SECURITY ADMINISTRATION**                                                **DEFENDANT**

## ORDER ADOPTING REPORT & RECOMMENDATIONS

Comes now before this Court, Plaintiff Deborah Rasche's Objections to the magistrate judge's Report and Recommendations. After reviewing the objection, response, rules, and authorities, the Court **ADOPTS** the magistrate judge's Report and Recommendation and addresses those objections below.

*Factual and Procedural Background*

The Plaintiff was born on March 6, 1958, and was forty-eight years old at the time of the second administrative hearing in this case on July 28, 2006. She completed high school. The Plaintiff's past relevant work has been as a store manager, office manager, cook and fast food establishment cashier. She filed her application for disability benefits on March 26, 2002. She alleges a disability onset date of February 1, 2002, due to cervical spine impairments, migraine headaches, anxiety, and carpal tunnel syndrome. The Social Security Administration denied Plaintiff's application initially and on reconsideration. Following a hearing on April 26, 2004, the Administrative Law Judge ("ALJ") entered a decision dated December 29, 2004, finding that the Plaintiff was not disabled. The Plaintiff filed a request for review of that decision, and the Appeals Council granted the Plaintiff's request on July 28, 2005.

It is noted that in its Order of Remand, the Appeals Council instructed the ALJ to:

Evaluate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a and 416.920a documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c).

Give further consideration to the claimant's maximum residual functional capacity (RFC) and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Rulings 85-16 and 98-8p)

Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 85-14) and Fields v. Bowen, 805 F.2d 1168,1170 (5th Cir. 1986). Hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence, the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 207). Thereafter, a new administrative hearing was held. Following that hearing, the ALJ issued a second unfavorable decision. Plaintiff then requested review of that second decision from the Appeals Council. On February 6, 2007, the Appeals Council denied Plaintiff's request for review of the second opinion, and the Plaintiff filed the present action with this court. The ALJ's final hearing decision is now ripe for review.

Although the ALJ did give "further consideration to the claimant's maximum residual functional capacity (RFC) and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations," as required by the Appeals Council, he made only cursory mention of the specific and tedious technique that is required in 20 CFR 404.1520a(e) and

2

20 CFR 416.920a(e).[1] At the second hearing the ALJ sought testimony of a vocational expert as

---

[1] 20 CFR 404.1520a(e) states that "[a]ssessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation." It further provides the manner in which an ALJ should proceed to document the technique required by the Social Security Regulations when identifying and determining the severity of a mental disorder. According to the Regulation, an ALJ is to "document application of the technique in the decision," and in doing so must specifically identify and rate specific areas and limitations as follows:

> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listing of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.
>
> (d) Use of the technique to evaluate mental impairments. After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s).
>
> (1) If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521).
>
> (2) If your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder. We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. We will record the presence or absence of the criteria and the rating of the degree of functional limitation on a standard document at the initial and reconsideration levels of the administrative review process. We will record the presence or absence of the criteria and the rating of the degree of functional limitation in the decision at the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision), and in the decision at the Federal reviewing official, administrative law

required by the Appeals Council and anticipated in Social Security Ruling 83-14, but he prohibited counsel for the plaintiff from asking certain questions of the vocational expert at the hearing.[2] Plaintiff contends that these issues, among others, require reversal.

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920 (1998). The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels then the burden shifts to the Commissioner at step five. Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). First, plaintiff must prove she is not currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b) (1998). Second, the plaintiff must prove her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§

---

judge, and the Decision Review Board levels in claims adjudicated under the procedures in part 405 of this chapter. See paragraph (e) of this section.

(3) If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.

It is necessary that the ALJ's "written decision must incorporate the pertinent findings and conclusions" based on this technique. " The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in the section."
20 CFR 404.1520a.

[2] Although the Appeals Council cited to SSR 85-14 in its Order of Remand, a quick review of that Ruling and simple on-line search of other rulings reveals that the citation should have properly been to SSR 83-14, entitled "TITLES II AND XVI: CAPABILITY TO DO OTHER WORK--THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING A COMBINATION OF EXERTIONAL AND NONEXERTIONAL IMPAIRMENTS."

404.1520(c), 416.920(c) (1998). At step three the ALJ must conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[3] Fourth, the plaintiff bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work.[4] If the plaintiff is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[5] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that she cannot, in fact, perform that work. Muse, 925 F.2d at 789.

As noted there have been two administrative hearings and two unfavorable decisions in this case by the same ALJ. It is the second decision, dated July 28, 2006, that is currently on appeal before this court. In his second decision, the ALJ determined that the plaintiff suffered from cervical disorders, a panic disorder, an adjustment disorder, a somatoform disorder, and a dependant personality disorder, which constitute "severe" impairments under the terms of the Act. (Tr. 26, Finding No. 2). However, the ALJ found that the Plaintiff did not suffer from any impairment or combination of impairments which meet or equal the requirements of the Listings set forth in Appendix 1 to the Regulations. (Tr. 26, Finding No. 3). The Appeals Council found no basis for

---

[3] 20 C.F.R. §§ 404.1520(d), 416.920(d) (1998). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525 (1998).

[4] 20 C.F.R. §§ 404.1520(e), 416.920(e) (1998).

[5] 20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (1998).

changing the ALJ's second decision.

On appeal to this court the plaintiff made the following arguments to the magistrate judge:

(1) The ALJ has consistently refused, both in this case and in past cases, to follow the statutorily specified process for accurately determining disability.

(2) Instead, the ALJ relied on his own subjective analysis of the claimant as he perceives her, as opposed to the objective evidence of experts, even refusing so allow some experts the right to speak.

(3) The evidence in the record proves that plaintiff is disabled by all CFR standards, and she is thus entitled to Social Security Benefits, Disability Insurance Benefits for the following reasons:

- The severity of plaintiff's impairments exceeds the requirements of any Listing contained within the Listing of Impairments set forth at Appendix 1 of the Regulations.
- Plaintiff lacks the residual functioning capacity for a broad range of light work, with additional significant non-exertional limitations.
- Plaintiff is definitively disabled within the meaning of the Social Security Act and Regulations.
- Finally, plaintiff has been disabled throughout and before these proceedings, thus entitling her to Disability Insurance Benefits.

The magistrate judge recommended that the ALJ's decision be affirmed. Specifically, the magistrate determined that the ALJ did not act outside his authority in limiting the testimony of the vocational expert in response to the Plaintiff's counsel's questioning, and that he based his decision on substantial evidence in the record. Further, Magistrate Judge Alexander found that the ALJ's bare bones acknowledgment of the CFR regulations follows the process for evaluating mental status as it is codified.

The Plaintiff objected to the magistrate's Report and Recommendations within the ten day time limit. Plaintiff raised the following objections: (1) the ALJ did not sufficiently evaluate the claimant's mental impairment under the CFR; (2) the ALJ erred in finding Plaintiff's pain symptoms

6

to be not credible; (3) the ALJ allowed his bias to overcome his neutrality; and (3) the vocational expert should have been allowed to testify further. These objections will be discussed below.

*Standard of Review*

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401, 91 S. Ct. 1420 (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). The Fifth Circuit has further stated that substantial evidence

> must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'

Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990). The court may not re-weigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner. Hollis v. Bowen, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994); Harrell, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive

and must be upheld. Paul v. Shalala, 29 F.3d 208, 210 (5th Cir. 1994). Suffice it to say that the standard of review is very heavily weighted in favor of affirmance.

*Discussion and Analysis*

*A. Remand Order*

The Appeals Council directed that the ALJ "[e]valuate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a and 416.920a documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a." According to 20 CFR § 404.1520a and 416.920a, when Part A of any of the mental Medical Listings is met, the ALJ must analyze whether the Part B or Part C criteria are met. The ALJ's decision states as follows:

> The undersigned finds further regarding mental issues that the claimant experiences "Fair" abilities to deal with the public, work with work stresses and function independently. The claimant regarding the "B" criteria experiences "mild restrictions in the activities of daily living, "mild" restrictions in maintaining social functioning and in maintaining concentration, persistence and pace, and no episodes of decompensation. She experiences no restrictions in the "C" criteria. The undersigned affords weight in this context regarding the forgoing "fair" abilities and extrapolates the foregoing restrictions in the "B" and "C" criteria from the December 2003 assessment of Dr. Masur (Exhibit 11).

(Tr. 25). The magistrate judge held that "[d]espite the plaintiff's argument, and despite the fact that the ALJ never mentioned the applicable regulations by number, this 'bare bones' acknowledgment of the regulations actually follows the process for evaluating mental status as it is codified."

Here, the ALJ found that Plaintiff had medically determinable mental impairments, thus meeting Part A. That required further evaluation under Part B or Part C according to the regulations. The ALJ expressly performed this analysis in his decision. Regarding Part B criteria, the ALJ found that Plaintiff had mild restrictions in the three categories dealing with activities of daily living, in

8

maintaining social functioning, and in maintaining concentration and attention. He found that she had no episodes of decompensation, the fourth criterion in the Part B analysis. Further, the ALJ found that Plaintiff had no restrictions in any Part C criteria. Therefore, the ALJ did consider whether or not Plaintiff met or equaled a Medical Listing. He found that she does not meet either Part B or Part C in regard to her alleged mental impairments.

Plaintiff contends that in analyzing Part B criteria under 20 C.F.R. § 404.1520a(b)(3), the ALJ is required to evaluate the degree of functional loss resulting from the impairment and prepare a document known as a Psychiatric Review Technique Form ("PRTF") that tracks the listing requirements and evaluates the claimant under Parts A and B. Plaintiff asserts that the ALJ's failure to complete this PRTF evaluation requires the decision to be overturned and remanded.

Indeed, prior to March 31, 2006, 20 C.F.R. § 404.1520a(d)(2) did require a "standard document" recording the presence or absence of the Parts A and B criteria and the rating of the degree of functional limitation at the administrative review. However, that provision was revised and the only requirement now is that the ALJ include the pertinent findings and conclusions based on the technique. Furthermore, the Appeals Council on remand, did not require the ALJ to complete a PRTF. The only requirement was that his decision conform to the appropriate regulations. His decision did conform to the most recent regulations. Accordingly, Plaintiff's objection to the ALJ's decision on this ground is unmeritorious.

This Court also gives credence to the fact that the claimant appealed the second adverse decision to the Appeals Council. That appeal was denied. The Appeals Council evidently determined that the ALJ had sufficiently complied with their directives on remand. Thus, the Appeals Council refused to reverse the ALJ's decision on these grounds.

9

This Court finds no legal error or reason for reversal based on the contention that the ALJ did not comply with the Appeals Council's order to follow the regulations, and the ALJ failed to fill out a PRTF.

*B. Pain Symptoms*

Plaintiff contends that because the ALJ did not complete the PRTF, he failed to fully discuss the evidence on which his findings were based. Moreover, she asserts the ALJ's findings were in conflict with objective medical evidence, and that there is not sufficient evidence to support a finding of no disability. As noted above, the PRTF is no longer mandatory; therefore, Plaintiff's objections on this basis are denied. In his second decision, the ALJ again found that the plaintiff's subjective complaints and symptoms were not entirely credible. In so finding, the ALJ stated:

> The undersigned finds the claimant's subjective complaints and hearing testimony less than fully credible. The claimant's assertions of debilitating constant neck pain at the level of eight on a ten-point pain scale, of stringent functional limitations wherein she can perform no comfortable lifting of any object heavier than a coffee cup and can sit or stand each for only five to ten minutes at a time, and stringent restrictions in activities of daily living wherein she can perform none of the customary household chores appear greatly disproportionate to the objective medical evidence, which as summarized herein presents essentially negative findings.

(Tr. 24). The ALJ then went on to examine each of the medical findings contained in the record that contradict the Plaintiff's complaints. His assessment, while again failing to mention specific code sections and regulations, nevertheless must be said to have followed the requirements for assessing a plaintiff's credibility. See Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989).

The Social Security Disability Benefits Reform Act of 1984 provides that:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ; there must be medical signs and findings . . . which could reasonably be expected to produce the pain or other symptoms alleged. . . . Objective medical evidence of pain or other symptoms established by medically acceptable

10

> clinical or laboratory techniques must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C. § 423(d)(5)(A). The Fifth Circuit has held that while a "a claimant's assertion of pain or other symptoms must be considered by the ALJ, [42 U.S.C. § 423(d)(5)(A)] requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged." Owens v. Heckler, 770 F.2d 1276, 1281 (5th Cir. 1985). Case law generally supports the premise that the existence of pain does not automatically create grounds for disability. Instead, the plaintiff must present objective evidence in support of her pain. The plaintiff's own subjective testimony and other evidence of pain will not take precedence over conflicting medical evidence. Owens, 770 F.2d at 1281; see also Harrell, 862 F.2d at 481; Parfait v. Bowen, 803 F.2d 810, 813 (5th Cir.1986). It is peculiarly within the province of the ALJ to make determinations regarding credibility of the evidence. Harrell, 862 F.2d at 480. The fact that the ALJ concluded that the Plaintiff did not experience the severe level of pain that she claimed is completely within the discretion of the ALJ as long as his decision is supported by substantial evidence as that term is defined by case law. His lack of detail does not change the fact that his decision is thus supported by the record.

*C. Bias*

Plaintiff claims that the ALJ's bias against her makes his credibility determination unconscionable. Further, the Plaintiff argues that substantial evidence could not possibly outweigh the ALJ's bias. In support of her contention that the ALJ was biased, Plaintiff quotes the magistrate judge's Report and Recommendation which stated that "it is not difficult to understand the basis for counsel's concern [that the ALJ was biased]," "[a]t times during the administrative hearings and in

his decisions in this case, the ALJ appears to border on being argumentative." The Plaintiff did not quote any language by the ALJ during the hearing to evidence his bias. Moreover, the Plaintiff does not cite any action, other than preventing the vocational expert from answering her representative's question, to show bias.

The Fifth Circuit, in addressing the alleged bias of an ALJ during a Social Security administrative hearing stated:

> "Judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge," unless "they reveal such a high degree of favoritism or antagonism as to make fair judgment seem impossible."

Brown v. Apfel, 192 F.3d 492, 500 (5th Cir. 2000) (quoting Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994)). The Plaintiff has not presented this Court with any evidence, nor is any evident from the record, of such a high degree of antagonism on the ALJ's part as to make fair judgment impossible. Accordingly, the ALJ was not biased, and his decision will not be overturned on this basis.

### D. *Vocational Expert Testimony*

The Plaintiff further cites the ALJ's preclusion of the vocational expert from testifying as to a vague hypothetical and ultimate conclusions in the case as evidence that this court should overturn the ALJ's decision. According to the hearing transcript, after questioning the vocational expert about some preliminary matters regarding the claimant, the ALJ asked a series of hypothetical questions. First, the ALJ asked the expert to assume the facts as the claimant had subjectively testified. The expert opined that assuming those subjective complaints were true, she could not return to her past

work and no other job existed in significant numbers in the United States which the claimant could pursue. The second hypothetical asked the vocational expert to assume that claimant's physical impairments were the same as hypothetical number one, but she also suffered from mental restrictions as defined by Dr. Masur's evaluation. The expert answered that the claimant could not return to her past work and no other job existed that claimant could perform assuming she had the physical and mental restrictions she testified to during the hearing and her evaluation with Dr. Masur. Third, the ALJ asked the vocational expert to assume that the claimant was of the age, education, and work history as testified, and could lift twenty to twenty five pounds on an occasional or frequent basis, could push and pull up to that weight on an occasional or frequent basis, had no significant standing, walking or sitting restriction, but could only perform climbing, balancing, stooping, crouching, kneeling, or crawling on an occasional basis, having the same mental restrictions enumerated in the second hypothetical.[6] The vocational expert testified that the claimant could return to her past work, and further, she could return to basically all of her prior work because there was no erosion of skills based on the stated psychological limitations.

The Plaintiff's representative then attempted to question the vocational expert specifically on Dr. Masur's evaluation. The exchange between the Plaintiff's representative and the ALJ is reproduced here:

> ATTY: . . . if you consider that Dr. [Masur] has previously found in his medical, in his psychiatric evaluations that Ms. Rasche has severe adjustment disorder, somatoform disorder, dependent personality disorder, and panic disorders, then in hypothetical number three could Ms. Rasche return to any of her past jobs?

---

[6] These facts are largely extrapolated from Dr. Ernest Lowe's evaluation and Medical Source Statement of the Plaintiff found in the record at 173-76.

13

> ALJ: I'm going to preclude the question respectfully. And the reason is that Counsel has enumerated certain defined impairments, but has not enumerated functional restrictions accruing to those impairments. I don't believe that the Vocational Expert is in a position appropriately to respond to the recitation of impairments, but rather only limitations. So I am here for you, Mr. Rutledge, [the vocational expert] is here for you, you are free to design restrictions which in your judgment flow from those or any other impairments and present them to [the vocational expert], but the mere recitation of, well-intentioned recitation of impairments, per se, I think is too vague for me to rely upon in any answer that [the vocational expert] would give.

Soon thereafter, Plaintiff's counsel attempted to ask the vocational expert whether or not, based on the record and testimony presented at the hearing, Deborah Rasche could work. The ALJ stopped the vocational expert from answering because the ALJ would not have specific cites to what the vocational expert referenced when he gave his answer. He explained:

> If there were unanimity about all the facts about what a Claimant could do or not do, there would be no hearing, there would be no dispute. . . . The doctors and psychologists may disagree on what the Claimant can do. The Claimant's testimony is obviously at variance with what some of the doctors have said she can do. So that the question as presented is ambiguous because, and would require an ambiguous response because you're asking, I say this respectfully, you're asking [the vocational expert] to draw conclusions based on the Claimant's testimony, which says one thing, and the, and the documentary evidence which says things in conflict with the Claimant's testimony and also in conflict with itself.

Further, the ALJ noted that in essence, the Plaintiff's counsel was asking the vocational expert to draw "ultimate conclusions" in the case which is the purview of the ALJ.

The Plaintiff argues that the ALJ's prohibition in questioning of the vocational expert prevented her from being adequately represented and is in violation of the Appeals Council's order to "obtain evidence from a vocational expert on the effect of the assessed limitations . . . [that]

14

should reflect the specific capacity/limitations established by the record as a whole."

A plaintiff has the right to have her attorney or representative question the vocational expert about the effects of a physician's findings on the plaintiff's ability to perform work. Indeed, the plaintiff or her representative has the right to question the vocational expert fully on any pertinent matter within the expert's area of expertise. 4 Social Security Law and Practice §52:103. It is necessary that the ALJ determine when a plaintiff may exercise this right and the appropriateness of any questions asked or answers given. Exceptions to this rule include:

> • If a vocational expert's replies are ambiguous or overly technical, the ALJ must follow up with more specific questions in order to obtain a response in terms understandable to the average layperson.
> • The ALJ may not permit a vocational expert to respond to questions on medical matters or to draw conclusions not within the expert's authority; e.g., regarding the claimant's residual functional capacity or the resolution of ultimate issues of fact or law.
> • The ALJ may not ask or allow the vocational expert to conduct any type of vocational examination of the claimant during the hearing.

4 Soc. Sec. Law & Prac. § 52:103. Certainly an ALJ is entitled to preclude questions that reach outside the scope of the vocational expert's area of expertise or that seek answers to issues that are exclusively within the purview of the ALJ.

The ALJ did preclude the vocational expert from responding to Plaintiff's counsel's questions which – without articulating specific functional restrictions found by any physician – sought the vocational expert's opinion of plaintiff's ability to do work after reviewing "the entire record." (Tr. 369 - 373). Specifically, the ALJ did not permit the vocational expert to respond to these questions based on the second exception listed above: the questions would have required the vocational expert to reach conclusions about medical and legal matters that were outside the vocational expert's areas of expertise in order to then render an opinion on vocational issues. The

ALJ repeatedly gave Plaintiff's counsel opportunity to tailor his questions to specific limitations found by particular physicians.

After careful review of the transcript, argument and briefs provided by the parties and the record as a whole, the undersigned cannot say that the ALJ acted outside of his authority in limiting the testimony of the vocational expert in response to Plaintiff's counsel's questions. Although he prohibited responses by the vocational expert to questions posed by Plaintiff's counsel relating to the diagnoses of Dr. Masur and Plaintiff's ability to return to her past work, the ALJ provided the opportunity for Plaintiff's counsel to rephrase his questions and provide specific limitations, including those provided by Dr. Masur's diagnoses. Plaintiff's counsel never crafted his questions in such a manner as to eliminate the ALJ's legitimate objections to the form of counsel's overbroad questions. (Tr 367 - 373). In short, the court holds that the ALJ was within his acting within the scope of this authority to prohibit questions which necessarily would have required the vocational expert to make judgments on matters which fell outside the vocational expert's areas of expertise.

*Conclusion*

The ALJ did follow the specific procedures of 20 CFR § 404.1520a and 415.920a, did not err in finding the Plaintiff's pain symptoms to be not credible, did not base his decision on bias, and did allow Plaintiff's counsel to rephrase his questions to the vocational expert. Accordingly, Plaintiff has presented no objection which changes the magistrate judge's analysis in her Report & Recommendation.

THEREFORE, it is hereby ORDERED that

(1) the Plaintiff's objections to the Report and Recommendation of the United States Magistrate Judge are OVERRULED;

(2)     the Magistrate's January 10, 2008, Report and Recommendation is APPROVED AND ADOPTED as the opinion of this court; and

(3)     this case is CLOSED.

SO ORDERED, this the   4th   day of September, 2008.

                 **/s/ Sharion Aycock**
                 **U.S. DISTRICT JUDGE**